IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JOHNNY BEARD, FRED BAKER
& SONS ELECTRIC, INC.,

    Plaintiffs,

v.   No. 04-2417 B

BENICORP INSURANCE COMPANY,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIMS BY PLAINTIFF
FRED BAKER & SONS ELECTRIC, INC. AND COUNT II OF
THE AMENDED COMPLAINT

---

Plaintiffs, Johnny Beard and Fred Baker & Sons Electric, Inc. ("Baker"), brought this action against the Defendant, Benicorp Insurance Company ("Benicorp"), pursuant to the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and common law breach of contract, alleging wrongful denial of benefits for claims he submitted under an employee benefit plan sponsored by Beard's employer, Baker. The action was removed to this Court on June 3, 2004 on the basis of federal question jurisdiction. See 28 U.S.C. § 1441. Before the Court is the Defendant's May 16, 2005 motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(6) permits the dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The Rule requires the court to "construe the complaint in the light most favorable to the plaintiff[s], accept all of the complaint's factual allegations as true, and determine whether the plaintiff[s] undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 12-29-05



1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim," Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark a Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

At all times relevant to the instant action, Beard was employed as an electrician with Baker. (Amend. Compl. ¶ 4.) The company contracted with Benicorp to provide group health insurance coverage for its employees in exchange for payment of a premium. (Id. ¶ 7.) Beard was insured under the policy against loss by reason of hospital, medical, surgical, ambulance, drug and rehabilitations services. (Id. ¶ 8-9.) While the policy was in effect, on January 26, 2004, Beard fractured his hip and, as a result, incurred $47,661 in medical, ambulance, surgical, hospital, and drug expenses. (Id. at ¶ 10.) Benicorp concedes that it has rejected and refused to pay the claims related to his hip fracture submitted by Beard. (Def.'s Answer Pl.'s Amend. Compl. ¶ 13.) In its motion, Benicorp seeks dismissal of all claims asserted by Baker as well as Count II of the complaint which asserts a state law breach of contract claim.

I. Claims Asserted by Fred Baker & Sons Electric, Inc.

Defendant argues in the instant motion that Baker lacks standing to maintain a claim for benefits under ERISA because the company is neither a participant nor a beneficiary of the plan. See 29 U.S.C. § 1132(a)(1)(B). In response to the motion, Plaintiffs concede that Baker has no standing or interest in this action. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss ("Pl.'s Resp.") at 1.) Accordingly, the Court GRANTS Defendant's motion to dismiss all claims by Baker against Benicorp with prejudice.

2

II. State Law Breach of Contract Claim

In Count II of the amended complaint, Beard alleges a state law breach of contract claim based on the failure of Benicorp to provide notice of the non-payment of the insurance premium by Baker. (Pl.'s Resp. at 1.) In the instant motion, Benicorp maintains that this state law claim must be dismissed because it is preempted by ERISA pursuant to 29 U.S.C. §§ 1132 and 1144. (Def.'s Mem. Support. Mot. Dismiss ("Def.'s Mot." at 3-8.)

"Congress enacted ERISA to protect . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." Aetna Health, Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 2495 (2004) (quoting 29 U.S.C. § 1001(b)) (internal quotations omitted). In order to effectuate a uniform regulatory regime, Congress explicitly included "expansive preemption provisions . . . intended to ensure that employee benefit plan regulation would be exclusively a federal concern." Id. at 208, 124 S.Ct. at 2495 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)) (internal quotations omitted).

Specifically, ERISA's preemption provision, Section 514, 29 U.S.C. § 1144(a), provides that "the provisions of this subchapter . . . shall supersede *any and all State laws insofar as they* may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted." Davila, 542 U.S. at 200, 124 S.Ct. at 2491. ERISA does, however, contain a "savings clause," 29 U.S.C. § 1144(b)(2)(A), which exempts from preemption "any law of any

3

State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). Therefore, only those state laws which are unrelated to a welfare benefit plan or come within the scope of ERISA's savings clause will survive preemption.

Beard does not dispute that he seeks, through his state law claim, to recover benefits pursuant to an employee welfare benefit plan governed by ERISA.[1] Thus, he does not maintain that the claim survives by virtue of being unrelated to a welfare benefit plan. See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658, 115 S. Ct. 1671, 1678 (1995) (noting that state laws providing alternative enforcement mechanisms "relate to" ERISA plans). Rather, Beard argues that ERISA's savings clause exempts his state law breach of contract claim from preemption. In support of his position, Beard relies upon a report and recommendation issued by a United States Magistrate Judge from the Middle District of Tennessee, Seals v. Health & Welfare Plan for Employees & Dependents of Harbour, Inc., No. 3:90-0463, 1991 U.S. Dist. LEXIS 18020 (M.D. Tenn. July 15, 2001).

In Seals, then Magistrate Judge Joe Haynes, who was later appointed a District Judge, considered whether ERISA preempted the plaintiff's state insurance law claims based on the failure of the insurer to notify the insured of the cancellation of the policy. Seals, 1991 U.S. Dist. LEXIS 18020, at *4. The magistrate judge issued a report and recommendation concluding that Tennessee common law imposes a contractual duty on insurers providing group coverage under a policy purchased by an employer to notify the employee insureds of cancellation. Seals at *45-6 (citing

---

[1] Because the health policy was established by Baker "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical or hospital care or benefits.. ." the Court finds that the policy constitutes an "employee welfare benefit plan" subject to regulation pursuant to ERISA. 29 U.S.C. § 1002(1)(A).

4

Parks v. Prudential Ins. Co. of America, 103 F.Supp. 493, 497 (E.D. Tenn)). Because, in the court's view, this decisional law "spreads policyholder risk by placing a burden of notification on the insurer; affects the policy relationship between the insurer and the insured . . .; and is directed at the insurance industry[,]" the duty of notification survived preemption as a state law regulating insurance pursuant to ERISA section 514. Id. at * 49-51.

The Defendant, however, argues that the report and recommendation in Seals is not binding authority nor is it in accord with federal precedent.[2] Benicorp does not dispute the existence of a Tennessee common law notice obligation[3], but argues, rather, that the requirement does not meet the standard established by the United States Supreme Court in Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), for a state law regulating insurance for purposes of the savings clause, which would therefore be subject to ERISA preemption. In Kentucky Ass'n of Health Plans, Inc., decided after Seals, the Supreme Court adopted a two-part test for determination of whether a law "regulates insurance" within the meaning of ERISA's preemption clause. Miller, 238 U.S. at 342, 123 S.Ct. at 1479. First, the state law must be "specifically directed

---

[2] In Seals v. The Health and Welfare Plan for Employees and Dependents of Harbor, Inc., Docket No. 3:90-0463, Memorandum, March 9, 1992 at 2, the district court rejected Magistrate Judge Haynes' report and recommendation on the basis that the contract at issue permitted cancellation without notice to the insured. In so holding, the district judge did not reach the issue of ERISA preemption.

[3] Magistrate Judge Haynes based his finding on Parks v. Prudential Ins. Co. of America, 103 F. Supp. 493 (E.D. Tenn.), which held that a plaintiff was not bound by the termination of a disability clause in a contributory group policy where the plaintiff was not notified of the change. In explaining its conclusion, the Parks court relied on Baugh v. Metropolitan Life Ins. Co., 173 Tenn. 352, 355 (Tenn. 1938), and Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 527 (Tenn. 1934), in which the Tennessee Supreme Court held that where an employee pays a portion of the insurance premium, a contractual relation is created between the insured employee and the insurer. "To permit the [insurer] to change the contract in a manner not authorized by the contract and without notice to the employee, would be in utter disregard of the 'contractual relation.'" Parks, 103 F.Supp. at 498 (D.C.Tenn. 1951).

5

towards entities engaged in insurance. Second . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured."[4] Id. at 341-42, 123 S.Ct. at 1479 (internal citations omitted).

First, the Court must consider whether the Tennessee common law contractual notice obligation identified by the magistrate judge in Seals is a state law "specifically directed towards entities engaged in insurance." Id. The fact that the state legal obligation is imposed as part of the decisional law rather than by statute is of no importance to this determination. See UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 367 n.1, 119 S.Ct. 1380, 1386, 143 L.Ed.2d 462 (1999) ("Common-law rules developed by decisions of state courts are "State law" under ERISA."); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 n.1, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) ("Decisional law that "regulates insurance" may fall under the saving clause."). Because the common law doctrine relied upon by Plaintiff, as espoused in Parks, focuses solely on insurers and regulates with respect to insurance practices, it is a state law specifically directed towards entities engaged in insurance. Miller, 538 U.S. at 334, 123 S. Ct. at 1475. Defendant has offered no argument, nor is the Court aware of any authority, which would negate this common sense finding.

---

[4] Prior to Miller, the Supreme Court directed courts to utilize a different test to determine whether a state law was within the scope of ERISA's savings clause. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 49-50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987) Under Dedeaux, the state law must have regulated insurance within a common-sense view of the word "regulate." Under this prong, the Supreme Court noted that "a common-sense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." Id. at 50. Second, the state law must have regulated the "business of insurance," as defined by cases interpreting the McCarran-Ferguson Act. In order to satisfy the "business of insurance" test, courts were instructed to consider three criteria: (1) whether the law had the effect of transferring or spreading a policyholder's risk; (2) whether the law had an impact on an integral part of the policy relationship between the insurer and the insured; and (3) whether the law was directed only at entities within the insurance industry. Id. at 49-50. Because the two prongs of the Miller test are virtually identical to components of the test it replaced, cases considering ERISA preemption prior to Miller are equally instructive here.

6

Accordingly, the Court finds that the first prong of the Miller test is satisfied.

Despite finding that Tennessee common law requiring notice to insureds of policy termination is a state law specifically regulating insurance pursuant to ERISA, the Court concludes that the law is nonetheless preempted by ERISA because it does not "substantially affect[ ] the risk pooling arrangement between the insurer and insured," and thus fails under the second prong in Miller. Miller, 538 U.S. at 342, 123 S.Ct. at 1471; see accord Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 569 (11th Cir. 1993), *cert. denied*, 513 U.S. 808 (1994) (finding that Georgia state statute requiring notice to insured of termination of coverage "does not have the effect of transferring or spreading a policyholder's risk."); Willett v. Blue Cross and Blue Shield of Alabama, 953 F.2d 1335, 1341 n.6 (11th Cir.1992) (noting that rule requiring notice to insured employee of lapse in coverage due to employer's failure to pay does not spread risk). "[T]he risk-spreading principle concerns the risk of injury that the insurer has contractually agreed to bear for the insured." Davies v. Centennial Life Ins. Co., 128 F.3d 934, 941 (6th Cir. 1997). Because the transfer of risk is effected by means of the insurance policy, "that transfer is complete at the time that the contract is entered." Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 130, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982); see also Davies, 128 F.3d at 941.

In considering whether a Georgia statute requiring termination notice to insureds substantially affects the risk pooling arrangement between the insurer and the insured, the Eleventh Circuit explained that

> although a statute that prevents cancellation of a policy without notice arguably affects the transfer of risk, since it regulates the conditions under which the insurer must continue to bear risks for the insured, it does not alter the initial apportionment of risk among the parties at the inception of the contract.

7

Smith, 14 F.3d at 570 n.9. Because the second prong of the Miller test concerns only laws that impact the initial apportionment of risk covered by the policy, and the Tennessee common law notice requirement does not alter the risks for which the insurer and insured originally contracted, the state law is not within the scope of the savings clause and is therefore preempted. Davies, 128 F.3d at 942.[5]

Based on the foregoing, Defendant's motion to dismiss Count II of the Amended complaint as well as all claims asserted by Plaintiff Baker is GRANTED.

IT IS SO ORDERED this 28th day of December, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court finds that the Tennessee common law notice requirement relied upon by the Plaintiff is preempted by ERISA Section 514, 29 U.S.C. § 1144(a), Defendant's argument that the state law is also preempted by 29 U.S.C. §§ 1132 is not addressed.

8

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 79 in case 2:04-CV-02417 was distributed by fax, mail, or direct printing on December 29, 2005 to the parties listed.

---

Jimmy Moore
CIRCUIT COURT, 30TH JUDICIAL DISTRICT
140 Adams Ave.
Rm. 224
Memphis, TN 38103

Johnny Beard
3641 Millington St.
Memphis, TN 38127

James S. Strickland
KUSTOFF & STRICKLAND
44 N. Second St.
Ste. 502
Memphis, TN 38103

John Morris Russell
LAWRENCE & RUSSELL
5050 Poplar Ave.
Ste. 1717
Memphis, TN 38157

Alice M. Morical
HOOVER HULL BAKER & HEATH, LLP
111 Monument Circle
Ste. 4400
Indianapolis, IN 46204--098

Andrew W. Hull
HOOVER HULL BAKER & HEATH, LLP
111 Monument Circle
Ste. 4400
Indianapolis, IN 46204--098

Gregory C. Brubaker
HOOVER HULL BAKER & HEATH, LLP
111 Monument Circle
Ste. 4400
Indianapolis, IN 46204--098

Honorable J. Breen
US DISTRICT COURT